# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-00191-01-CR-W-BP |
| | ) | |
| TERRQUAN J. BEASLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant has been charged with one count of being a felon in possession of a firearm. He filed a Motion to Suppress, (Doc. 16), contending that the firearm and his statement revealing that he possessed it should be suppressed. The Honorable Lajuana M. Counts, United States Magistrate Judge for this District, held a hearing on March 10, 2021, and she issued a Report recommending that the Motion to Suppress be denied. (Doc. 34.) Defendant objects to Judge Counts's Report and Recommendation ("the Report").

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing, Defendant's objections and the Government's response to the objections. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Suppress; the Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

## I. BACKGROUND

While the Court adopts the Report's recommended factual findings *in toto*, a brief summary is necessary for purposes of the present discussion. On May 12, 2020, Kansas City Police Dispatch

("Dispatch") reported a shooting at Research Medical Center ("RMC"), and officers responded to the scene.[1] While the officers were en route Dispatch reported that the shooting victim was in the ER at RMC and the shooting actually occurred in the vicinity of 80th or 81st Street and Brooklyn. Dispatch also reported that the victim had been driving a vehicle but that a passenger moved the victim to the back seat and drove him to the hospital and on the way had hit another car.

Upon arriving, the officers encountered a white SUV in the ambulance bay, which had been used to transport the victim. The SUV had numerous bullet holes and damage to the front end consistent with colliding with another object (such as another vehicle). There was also blood inside and outside the SUV. Officers cordoned off the SUV with crime scene tape.

Officers also talked to the occupants of the car, Defendant and Jamil Jackson – although Jackson did most (if not all) of the talking. Jackson reported that they had been sitting in the SUV when someone started shooting at them; he was not sure of the exact location but recalled a sign for 81st Street. Once the driver was shot Jackson moved him to the back seat and drove the SUV to RMC. At some point during this conversation Dispatch issued another call reporting that witnesses reported two black males had been shooting firearms in the vicinity of 80th and Brooklyn. After approximately two minutes of conversation with Jackson and Defendant, the officers had them sit down on a bench near the SUV but outside the area where the officers were working in order to get them further away from what was considered a crime scene.

Approximately one minute after moving Defendant and Jackson to the bench, the officers patted them down for weapons. Before doing so the officers asked if they had any weapons on

---

[1] Given the issues there is no need to specify which police officer took which action. The officers whose actions are described in this summary are (1) probationary officer Mitchell Powell and his field training officer, LaSonia Epperson (who has since changed her name and been promoted) and (2) probationary officer Jacob Giangrosso and his field training officer, Frank Duque. The Report (which, as stated, has been adopted by the Court in its entirety) parses out each officer's actions.

2

them; they both said "no."  However, shortly thereafter (in response to a re-asking of the question) Jackson said that he had a firearm.  The firearm was recovered; Defendant was then handcuffed.  At some point (it is not clear when) Defendant and Jackson were told they were not being arrested but were being detained until a detective involved in the investigation of the shooting arrived.  A detective (David Adair) arrived approximately twenty-five minutes later, and approximately five minutes after that he learned that there was a warrant for Defendant's arrest.

Additional facts will be discussed as necessary in Part II of this Order.

## II.  DISCUSSION

Defendant contends that he was detained without reasonable suspicion and asked questions without being given his *Miranda* warnings,[2] so his statement that he possessed a firearm and the discovery of that firearm should be suppressed.  The Report recommends that the Court conclude (1) the officers had reasonable suspicion that Defendant was involved in some fashion in criminal activity, so any detention was justified, (2) the frisk for weapons was justified due to an interest in officer safety, (3) the routine question regarding weapons did not require *Miranda* warnings and (4) even if the discovery of the firearm violated Defendant's rights, suppression is not warranted because it would have been inevitably discovered.  The Court agrees (and adopts) the Report's analysis, as augmented below.

First, Defendant objects to the Report's failure to specify the point in time that the officers' encounter with Defendant became nonconsensual and further insists that point occurred when the officers had Defendant and Jackson sit on the bench.  The Court does not believe the issue is as important as Defendant suggests; nonetheless, the Court holds that Jackson was not seized when he was asked to sit on the bench.  There seems no doubt that until that time the encounter between

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

the officers and Defendant and Jackson was consensual. To determine whether (and when) the encounter was no longer consensual, the Court must consider the totality of the circumstances, including

> officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (quotation omitted). Here, the officers did not display any weapons, hold any of Defendant's property, or indicate that Defendant was the focus of an investigation. The questions being asked were based on the obvious fact that Defendant and Jackson were witnesses to a crime: the shooting of the driver. Based on the Court's review of the dashcam videos and the officers' testimony, it is clear that the officers were trying to move Defendant away from the SUV because it was itself a crime scene; their tone and demeanor does not suggest that Defendant was ordered or compelled to sit on the bench but rather that the bench was a suitable place for Defendant and Jackson to sit while the SUV was processed. While the officers testified that the Defendant would have been required to wait for a detective to arrive, that fact was not communicated to Defendant until later, and the officers' unstated intent could not have conveyed to Defendants that they were directed to the bench because they were not free to leave.

Regardless, "sitting on the bench" is not the triggering event for Defendant's Motion to Suppress; the triggering events were (1) the frisk and (2) the contemporaneous and subsequent questions asking whether Defendant had any weapons. And the Court agrees with the Government, (Doc. 21, p. 6), and the Report's conclusion that Defendant was seized when he was told that he would be frisked, which (1) makes it irrelevant whether he was seized earlier and (2)

4

makes the real question: was the frisk constitutional? "To be constitutionally reasonable, a protective frisk must be based upon a reasonable suspicion that criminal activity is afoot" and is supported by "specific and articulable facts taken together with rational inferences support the reasonable suspicion that a party was potentially armed and dangerous." *United States v. Ellis*, 501 F.3d 958, 961 (8th Cir. 2007) (cleaned up). Reasonable suspicion requires more than a "mere hunch," but the level of suspicion need not rise to the level of probable cause. *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020). Here, the officers knew that two black males were shooting firearms, and Defendant and Jackson were two black males who had been involved in the shooting. While the officers knew that Defendant and Jackson were witnesses to a crime, they did not know if their involvement went further; that is, the officers did not know if Jackson or Defendant were one or both of the men who had been shooting firearms. And given the nature of the crime involved, a concern for officer and public safety was reasonable. Therefore, the Court holds that the officers had reasonable suspicion to conduct the frisk.

The Court further agrees with the Report's alternative conclusion that the firearm would have been inevitably discovered. The Court finds that, during the investigation into the shooting the officers would have learned Defendant's name, learned of the outstanding warrant, arrested him, conducted a search incident to that arrest, and found the gun. However, this sequence seems to be as much a question of attenuation than it is a question of inevitable discovery. The attenuation doctrine is "an exception to the exclusionary rule that applies when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *United States v. Lowry*, 935 F.3d 638, 642 (8th Cir. 2019) (cleaned up). In *Utah v. Strieff*, 136 S. Ct. 2056 (2016),

5

the Supreme Court held that the discovery of an outstanding arrest warrant attenuated the connection between an unlawful seizure and the discovery of contraband or evidence. The critical factors were (1) the nature of the intervening event, which required the defendant's arrest and (2) the purpose and egregiousness of the misconduct. Assuming Defendant's seizure was unconstitutional (contrary to the Court's holding), the purpose for detaining Defendant was to gather information about the crime he witnessed; even if a brief detention for that purpose was misconduct, it was not particularly egregious.

Finally, the officers did not need to provide *Miranda* warnings prior to asking Defendant if he was armed because the question was prompted by concerns about safety. *E.g., United States v. Brooks*, 982 F.3d 1177, 1180 (8th Cir. 2020).

### III. CONCLUSION

The Court adopts the Report and Recommendation, (Doc. 34), in its entirety, augmented by the discussion above. Defendant's Motion to Suppress, (Doc. 16), is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: July 12, 2021                    UNITED STATES DISTRICT COURT